IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN STOCKMAN, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br><br>Defendant. | Case No. 21-cv-5396<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Midland Credit Management, Inc. moves to compel arbitration in this putative class action brought by Kathleen Stockman under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p ("FDCPA"). For the reasons stated herein, the motion to compel arbitration [8] is granted.

**I. Background**

On or about December 16, 2017, Plaintiff Kathleen Stockman applied for and was issued a Pottery Barn credit card account ("the Account") by Comenity Bank. [1] Ex. A at 4; [9] at 2; Declaration of Matthew Blosco ("Blosco Decl.") [9-1] ¶7, Ex. A. Pursuant to Comenity's policies and procedures, a copy of the Account Agreement ("the Agreement") was mailed to Stockman via U.S. Mail at the address Comenity had on record for the account. [9] at 2; Blosco Decl. ¶8. Comenity has no record that the Agreement was returned as undeliverable. *Id*.

1

The Agreement contains provisions addressing arbitration and class actions. [9] at 2; Blosco Decl. ¶9, Ex. A. The Arbitration Provision permits Comenity to elect mandatory arbitration of "any claim, dispute or controversy . . . that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program, any prior agreement or account." Blosco Decl. Ex. A § "Covered Claims." In addition, claims subject to arbitration "ha[ve] the broadest possible meaning, and include[] initial claims, counterclaims, cross-claims and third-party claims." *Id*. It also covers "disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief)." *Id*.

The first page of the Agreement states, in bold:

> **Section I of this Agreement also includes a Jury Trial Waiver and an Arbitration Provision in the event of a dispute.**
> - **You have a right to reject this Arbitration Provision.**
> - **If you do not reject this Arbitration Provision, it will be part of this Agreement and will:**
>     - **Eliminate your right to a trial by jury; and**
>     - **Substantially affect your rights, including your right to bring, join in or participate in class proceedings.**

Blosco Decl. Ex. A at 1. The Arbitration Provision states in bold capital letters:

> **READ THIS ARBITRATION PROVISION CAREFULLY. IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH C.1. BELOW, IT WILL BE PART OF THIS AGREEMENT AND WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.**

Blosco Decl. Ex. A § "Arbitration Provision." The Arbitration Provision further states in bold:

2

> **6. Court and Jury Trials Prohibited; Other Limitations on Legal Rights: IF YOU OR WE ELECT TO ARBITRATE A CLAIM, YOU WILL NOT HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM. ALSO, YOUR ABILITY TO OBTAIN INFORMATION FROM US IS MORE LIMITED IN AN ARBITRATION THAN IN A LAWSUIT. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.**

Blosco Decl. Ex. A § "Court and Jury Trials Prohibited; Other Limitations on Legal Rights."

The Agreement also contains a class action waiver, which prohibits participation in a class action in court or at arbitration:

> **IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION, EITHER AS A PLAINTIFF, DEFENDANT OR CLASS MEMBER; (2) NEITHER YOU NOR WE MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; (3) CLAIMS BROUGHT BY OR AGAINST YOU MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON; AND (4) THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION OR MULTIPLE-PARTY ARBITRATION.**

Blosco Decl. Ex. A § "Prohibition Against Certain Proceedings."

Under the Agreement, Stockman could opt out of the arbitration and/or class action waiver provisions by notifying Comenity in writing of her intent to opt out within thirty (30) days after the date Comenity provided her with a copy of the Agreement or written notice of the right to opt out. [9] at 2; Blosco Decl. ¶9, Ex. A. Comenity did not receive such correspondence. Blosco Decl. ¶10. The Agreement also notified Stockman that: "Your use of the account, or failure to close the account within

3

the 30 days of receiving this document, indicates your acceptance of the terms of this agreement." *Id.* Exh. A.

The Arbitration Provision also states under "Parties Subject to Arbitration" that, "[s]olely as used in this Arbitration Provision (and not elsewhere in this Agreement), the terms 'we,' 'us,' and 'our' mean (a) Comenity Bank, any parent, subsidiary or affiliate of the Bank and the employees, officers, and directors of such companies (the 'Bank Parties'); and (b) any other person or company that provides any services in connection with this Agreement if you assert a Claim against such other person or company at the same time you assert a Claim against any Bank Party." *Id.*

Stockman last made a purchase using the Comenity credit card on January 24, 2019. Blosco Decl. ¶11, Ex. B. The last payment posted to the Account on June 24, 2019. *Id.*, ¶12, Ex. C. When Stockman did not pay, the account defaulted. [2-1] at 4.

In February 2020, Comenity sold and assigned all rights, title, and interest in Stockman's credit card account to Defendant Midland Credit Management, Inc. ("MCM") pursuant to the Bill of Sale and Portfolio Level Affidavit of Sale by Original Creditor. [9] at 5; Blosco Decl. ¶14, Ex. E; *see also* Declaration of Mike Burger ("Burger Decl."), ¶¶5, 6. The Bill of Sale states, "[Comenity] . . . hereby assigns . . . all rights, title and interest of [Comenity] in and to those certain Accounts described in the Credit Card Account Purchase Agreement and Schedule 1 . . . for all purposes, to [MCM]." Blosco Decl. Ex. E. The Bill of Sale was followed by a document titled "Schedule 1 to Bill of Sale". *Id.* at 2. As part of the sale, Comenity transferred its records of Stockman's account to MCM. [9] at 5; Burger Decl. ¶6. In a February 12,

4

2020 letter, Comenity informed Stockman that it had sold her account to MCM and that, "[a]s the new owner of the account, [MCM] is entitled to pursue the collection activities and other legal remedies to collect the unpaid balances on your charged-off account, now due to [MCM]." [9] at 5; Blosco Decl. ¶15, Ex. F. On or about April 28, 2021, MCM mailed Stockman a letter in an attempt to collect the Account from her. [2-1] at 4.

On August 26, 2021, Stockman sued MCM in Cook County Circuit Court. [2-1]. On October 12, 2021, MCM removed the case to this court, and thereafter filed the instant motion to compel arbitration. [2], [9].

## II. Standard

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Act "mandates that district courts *shall* direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). It reflects a "liberal federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and places "arbitration agreements on an equal footing with other contracts," *Gore v. Alltel Comm'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *Concepcion*, 563 U.S. at 339). "When deciding whether parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Druco*

5

*Rest., Inc. v. Steak N Shake Enterp., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties." *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 619 (7th Cir. 2021) (cleaned up).

Under the FAA, in response to an opposing party's refusal to arbitrate despite a written agreement for arbitration, a party "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The party seeking to compel arbitration bears the burden to show an agreement to arbitrate. *Id.*; *see A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). "The court may consider exhibits and affidavits regarding the arbitration agreement in question." *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *3 (N.D. Ill. June 12, 2018). Once the moving party makes its initial showing, the party resisting arbitration bears the burden of identifying a triable issue of fact on the purported arbitration agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The resisting party's evidentiary burden is like that of a party opposing summary judgment. *Id.* "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* As with summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws reasonable inferences in its favor. *Id.* If the party

opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." *Id.* (quoting 9 U.S.C. § 4).

III. Analysis

A. Enforceable Arbitration Agreement

The Court first addresses whether a valid arbitration agreement exists. State law controls the determination of this issue. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). Under Illinois law[1], an enforceable contract requires an offer, acceptance, and consideration. *Jefferson v. Credit One Bank, N.A.*, No. 21 C 532, 2021 WL 4894704, at *3 (N.D. Ill. Oct. 20, 2021) (citing *DiLorenzo v. Valve & Primer Corp.*, 807 N.E.2d 673, 678 (Ill. App. Ct. 2004)). It is undisputed that Comenity's mailing Stockman a credit card and a copy of the Agreement constituted an offer to extend credit. *See Portfolio Acquisitions, L.L.C. v. Feltman*, 909 N.E.2d 876, 881 (Ill. App. Ct. 2009) ("[T]he issuance of a credit card and cardholder agreement is a standing offer to extend credit that may be revoked at any time.").

Stockman argues that she never accepted the terms of that Agreement, including the arbitration provision, because she did not sign it. The Agreement, however, expressly states: "Your use of the account, or failure to close the account within the 30 days of receiving this document, indicates your acceptance of the terms of this agreement, including the assessment of any interest charges and fees." Blosco Decl. Ex. A. Stockman concedes that she used her credit card which created a contractual

---

[1] The parties agree that Illinois law applies. [9] at 9; [10] at 4; [11] at 5–6, 10.

obligation to pay the amounts owed. [10] at 5. Without citing any authority, she argues that this did not mean she assented to the terms of the Agreement.

Under Illinois law, "use of the card by the cardholder makes a contract between the cardholder and the issuer." *Garber v. Harris Tr. & Savings Bank*, 432 N.E.2d 1309, 1315 (Ill. App. Ct. 1982); *see also Discover Bank v. Applegate*, 2017 IL App (4th) 160571-U, ¶ 33 (Ill. App. Ct. 2017) (noting that "a cardholder accepts the terms of the cardholder agreement through the use of the credit card.") (citing *Garber,* 432 N.E.2d 1309). Stockman's application for the Comenity card, Comenity's offer of credit, and Stockman's use of the card created a contract. "[E]ach time the credit card is used, a separate contract is formed between the cardholder and bank." *Portfolio Acquisitions*, 909 N.E.2d at 881*; see also Ragan v. AT & T Corp.*, 824 N.E.2d 1183, 1189 (Ill. App. Ct. 2005) ("Plaintiffs' silence and inaction upon receipt of the [agreement] constituted an acceptance of defendant's offer presented in the agreement"); *Boomer v. AT & T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) (finding that, because a customer had a reasonable opportunity to reject a mailed offer, but nonetheless continued to use offeror's services, that customer's silence constituted an acceptance). Additionally, a party to a contract "may, by [her] acts and conduct, indicate [her] assent to its terms and become bound by its provisions even though [s]he has not signed it." *W. Bend Mut. Ins. Co. v. DJW-Ridgeway Bldg. Consultants, Inc.*, 40 N.E.3d 194, 202 (Ill. App. Ct. 2015) (cleaned up). Stockman does not dispute that she used the card at least once on January 24, 2019, after receiving the Agreement. Blosco Decl. ¶11, Ex. B.

8

Stockman contends, though, that using her credit card did not amount to an acceptance of the arbitration provision because it is "unclear whether [she] received these terms and conditions before her account was available to use," and MCM has not proved that she had a chance to review the Agreement. [10] at 6. But MCM provided evidence that it mailed her the Agreement as part of its Welcome Kit on or about December 17, 2017 via U.S. Mail and that it was not returned as undeliverable. Blosco Decl. ¶8. Evidence of a proper mailing generally "raises a rebuttable presumption of delivery." *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476 (7th Cir. 2009).

Further, the evidence shows she was using the credit card after having received the Agreement. Blosco Decl. ¶ 11. Stockman does not offer any evidence to the contrary. *See Tinder*, 305 F.3d at 735 ("[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial."); *cf. Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708, 715 (N.D. Ill. 2017) (explaining that "a *sworn denial* would rebut the presumption for summary judgment purposes" regarding whether plaintiff received a letter) (emphasis added). As MCM argues, *Gilbert v. I.C. Systems, Inc.*, No. 19-CV-04988, 2021 WL 292852 (N.D. Ill. Jan. 28, 2021), cited by Stockman, is distinguishable. There the court found that the offeree did not assent to the agreement because defendant provided only a *website printout* of the terms. *Id.* at *7. MCM, by contrast, provided unrebutted evidence that it mailed the Agreement to Stockman.

Therefore, Stockman's receipt of the Agreement and use of the credit card shows she accepted the terms of the Agreement including the arbitration provision.

**B. MCM's Status as Assignee**

Next Stockman challenges MCM's ownership of the Account and right to arbitrate. She argues that the Bill of Sale fails to identify her Comenity account or the effective date of or consideration for the assignment from Comenity, as required by Section 8b of the Illinois Collection Agency Act, 225 Ill. Comp. Stat. 425/1.

The Court agrees with MCM that Section 8b does not apply to the sale of the Account from Comenity to MCM. Section 8b applies only when a collection agency has been assigned an account "to enable collection of the account in the agency's name as assignee for the collector." 225 Ill. Comp. Stat. 425/8b. As the Illinois Appellate Court has explained, assignment for collection is a "specific legal concept that refers to the transfer of only legal title for the purpose of collecting a debt on behalf of the creditor" and "is distinct from a sale, which refers to the transfer of *both* legal and equitable title." *Unifund CCR Partners v. Shah*, 993 N.E.2d 518, 524 (Ill. App. Ct. 2013). The legislature therefore intended Section 8b to "exclude *sales of an account to a debt buyer*." *Id.* (emphasis added).

Stockman also argues that, because the Bill of Sale and documents made part thereof do not identify her account, and MCM relies only on a "self-serving" affidavit, MCM has not proven that it is the assignee of her Account. [10] at 7–8. Pursuant to Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge" and "set out facts that

10

would be admissible in evidence." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Evid. 602. Under Federal Rule of Evidence 803(6), an exception to the hearsay rule applies for business records if:

> (1) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (2) the record was kept in the ordinary course of a regularly conducted activity of a business, organization, occupation, or calling; (3) making the record was a regular practice of that activity; (4) all these conditions are shown by the testimony of a custodian or another qualified witness; and (5) the opponent does not show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness.

*Torry v. City of Chicago*, 932 F.3d 579, 585 (7th Cir. 2019) (citing Fed. R. Evid. 803(6)). To authenticate a business record, a qualified witness need not be in control of or have individual knowledge of the particular records; he need only be familiar with the business's recordkeeping practices. *Id.* at 586 (citing *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006)).

MCM has provided two affidavits: Blosco, litigation supervisor at Comenity LLC, [9-1], and Burger, senior director of operations for MCM, [9-2]. Burger states, under penalty of perjury of law, that MCM purchased Stockman's Account in February 2020. [9-1] ¶ 4. Blosco similarly states, also under penalty of perjury of law, that Comenity "sold and assigned all rights, title and interest in the Account to [MCM] in February 2020 . . . pursuant to the Bill of Sale and Portfolio Level Affidavit of Sale by Original Creditor." [9-1] ¶ 14. Comenity informed Stockman of the sale of the Account to MCM. *Id.* ¶ 15. Pursuant to the Bill of Sale attached to the Blosco Declaration, Comenity assigned "all rights, title and interest" in the Account to MCM. *Id.*, Ex. E.

11

Stockman critiques the "self-serving" affidavit of Burger, but does not raise any challenge to the Blosco affidavit.

Burger's and Blosco's affidavits and their attached exhibits, which qualify as business records subject to the hearsay exception, confirm the assignment of the Account to MCM and MCM's ownership of the Account. Stockman has not provided any evidence to the contrary. *See Tinder*, 305 F.3d at 735 (explaining that the resisting party's evidentiary burden is like that of a party opposing summary judgment).

Stockman takes issue with the fact that her Account is not specifically identified on the Bill of Sale. But Blosco attests, under penalty of perjury of law, that "[her] Account was one of the accounts sold by Comenity to [MCM] pursuant to the Bill of Sale and Portfolio Level Affidavit of Sale By Original Creditor." [9-1] ¶14. Schedule 1 to Bill of Sale states that "[t]he individual Accounts transferred pursuant to the Credit Card Account Purchase Agreement and Bill of Sale" were described in an electronic file delivered by Comenity to MCM on February 11, 2020. *Id.*, Ex. E at 2. Blosco's sworn affidavit confirms that Stockman's Account was one of these accounts. Therefore, MCM's unrebutted evidence shows that Comenity sold Stockman's account to MCM.

Under Illinois law, "once a valid assignment is effected, the assignee acquires all of the interest of the assignor in the property and stands in the shoes of the assignor." *Sun Life Assurance Co. of Canada v. Great Lakes Bus. Credit LLC*, 968 F. Supp. 2d 898, 914 (N.D. Ill. 2013) (quoting *Stride v. 120 W. Madison Bldg. Corp.*, 477 N.E.2d

1318, 1320 (Ill. App. Ct. 1985)). Indeed, here, the Agreement states: "In this Agreement, 'We,' 'Us' and 'Our' mean Comenity Bank and any successor *or assigns*." [9-1] Ex. A (emphasis added). And the assignment of rights in the Bill of Sale is broad. *See Sun Life*, 968 F. Supp. 2d at 914. Thus, MCM's rights as assignee to "all rights, title and interest" in the Account include the right to invoke the arbitration and class action waiver provisions in the Agreement. *See Russell v. Midland Credit Mgmt., Inc.*, No. 20-CV-00618, 2021 WL 1192580 at *10 (N.D. Ill. Mar. 30, 2021) (explaining that because of the assignments, "Midland Funding has stepped into the shoes of the Credit One and succeeds to all rights of Credit One, including the right to invoke the arbitration provision and the class action waiver provision in the Card Agreement.").

Stockman also contends that MCM has failed to abide by the Best Evidence Rule because it did not provide the purchase agreement itself. [10] at 10. Under that rule, "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. But because MCM has provided the Bill of Sale and the Blosco and Burger Declarations and accompanying exhibits showing that Comenity transferred "*all* rights, title and interest" (emphasis added) in her Account, the purchase agreement itself is not needed to prove arbitrability. *See Russell*, 2021 WL 1192580, at *10 (concluding that plaintiff's best evidence challenge did not overcome defendants' chain of title).

Stockman relies on *Lillegard v. Blatt, Hasenmiller, Leibsker & Moore*, No. 16 C 8075, 2017 WL 1954545 (N.D. Ill. May 11, 2017), to argue that Best Evidence Rule

13

requires MCM to produce the actual purchase agreement. However, in *Lillegard* the court found multiple other issues with the purchase and sale agreement. 2017 WL 1954545 at *5. In addition, the bill of sale in *Lillegard* stated only that the debt issuer would transfer and assign the accounts, unlike the Bill of Sale in this case which assigns "all rights, title and interest" in and to the accounts.

Therefore, MCM's unrebutted evidence shows that it is the assignee of Stockman's Account and can properly invoke the arbitration provision.

### C. Scope of Arbitration Provision

Finally, Stockman argues that even if there is a valid arbitration agreement, the arbitration provision does not apply to her claim because Comenity is not a debt collector under the FDCPA. [10] at 11–12.

This argument misreads the Agreement. Pursuant to the Agreement's preamble, the words "We," "Us," and "Our," "mean Comenity Bank and any successor or assigns." Blosco Decl. Ex. A. This means that the Agreement applies to MCM as an assignee of Comenity. The arbitration provision also states that claims subject to arbitration means "any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement [or] the Account." *Id.* Further, it specifies that "Claim" has "the *broadest possible meaning*," covering "disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity." *Id.* (emphasis added).

Broad arbitration clauses such as this one "necessarily create a presumption of arbitrability." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th

14

Cir. 1999). Stockman fails to rebut this presumption. Therefore, because her FDCPA claim "arises from or relates to" her failure to pay the Account, it falls within the scope of the arbitration provision. Blosco Decl. Ex. A.

Stockman also contends that the FDCPA does not cover MCM because it is not a parent, subsidiary or affiliate of Comenity. However, again, "once a valid assignment is effected, the assignee acquires all of the interest of the assignor in the property and *stands in the shoes of the assignor.*" *Sun Life*, 968 F. Supp. 2d at 914 (emphasis added); *see also Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005). MCM is the assignee of all of the "rights, title and interest" in the Account. Accordingly, the Court agrees with MCM that Stockman's claim falls within the scope of the arbitration provision. *See Hauptman v. Midland Credit Mgmt.*, No. 1:18-cv-976, 2019 WL 8436961, at *2 (N.D. Ill. Jan. 31, 2019) (explaining that "[c]ourts have repeatedly determined FDCPA claims to be within the scope of broad arbitration clauses, like the one here, and have required arbitration of those claims"); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 (explaining that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

For the same reasons explained above regarding the applicability of the arbitration provision, the Court finds that the class waiver provision also applies to her claim.

As a final matter, MCM requests a stay of the case but this Court agrees with other courts in this district dismissing the case instead of issuing a stay. *See Hauptman*, 2019 WL 8436961, at *2; *Russell*, 2021 WL 1192580, at *12 (granting

15

motion to compel arbitration and terminating case); *Williams v. Planet Fitness, Inc.*, No. 20 CV 3335, 2021 WL 1165101, at *5 (N.D. Ill. Mar. 26, 2021) ("Courts in this district favor dismissal where 'the entire dispute clearly will be decided in arbitration and thus there is no reason to hold on to the case.'") (quoting *Wallace v. Grubhub Holdings Inc.*, No. 18 C 4538, 2019 WL 1399986, at *6 (N.D. Ill. Mar. 28, 2019), *aff'd*, 970 F.3d 798 (7th Cir. 2020)). The Court will therefore dismiss the case.

### IV. Conclusion

For the stated reasons, MCM's Motion to Compel Arbitration [8] is granted. This case is dismissed. Civil case terminated.

E N T E R:

Dated: May 12, 2022

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge